# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CASSETICA SOFTWARE, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **COMPUTER SCIENCES CORP.,** <br><br> Defendant. | **Case No. 11 C 2187** <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cassetica Software, Inc. (hereinafter, "Cassetica") brought the instant suit alleging copyright infringement against Computer Sciences Corp. (hereinafter, "CSC"). Cassetica now moves to dismiss CSC's counterclaims and strike its affirmative defenses. For the reasons stated herein, Cassetica's Motion to Dismiss CSC's Counterclaims is granted, with CSC given leave to replead its claim under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. 510, *et seq.*, within 30 days of the date of this Order. Cassetica's Motion to Strike CSC's Affirmative Defenses is granted, except that the defense of unclean hands may stand.

## I. BACKGROUND

Cassetica is a software developer that developed a companion program to Lotus Notes called "NotesMedic." It contends that CSC's employees, acting within the scope of their employment, have copied

Cassetica's software code and infringed Cassetica's copyright and that CSC is vicariously liable for these infringements.

This is not the first lawsuit involving these parties. In 2009, Cassetica sued CSC for infringement of its copyright on a prior version of the NotesMedic program and sought statutory damages. Judge Virginia Kendall dismissed the suit. *Cassetica Software, Inc. v. Computer Scis. Corp.*, 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009). Her ruling was based on the fact that the alleged infringement started prior to the effective date of the copyright registration, which was January 22, 2007. *Id.* at *2; *see* 17 U.S.C. § 412(2).

Cassetica contends that since the dismissal of that suit, CSC employees have continued to download new, separately copyrighted versions of its NotesMedic software (referred to as Versions 6 and 7). Both of these versions have been registered with the Copyright Office, and all the illegal downloading took place after registration, the Complaint alleges.

CSC has filed counterclaims under the IUDTPA and for common law unfair competition. Cassetica seeks to dismiss these counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). CSC also has pleaded several affirmative defenses. Cassetica seeks to strike each of these defenses pursuant to Fed. R. Civ. P. 12(f). Each motion will be addressed in turn.

## II. CSC's COUNTERCLAIMS

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. *In re HealthCare Compare Corp. Sec. Litig.,* 75 F.3d 276, 279 (7th Cir. 1996). In ruling on a motion to dismiss a counterclaim, the court accepts the well-pleaded allegations of the counterclaim as true and construes them in the light most favorable to the counter-plaintiff. *Terrell v. Childers*, 889 F.Supp. 311, 314 (N.D. Ill. 1995).

### B. IUDTPA

CSC's claim under the IUDTPA alleges that Cassetica markets and promotes its NotesMedic software in a deceptive and misleading fashion in order to trick businesses into entering into unwanted licenses for the software. Although CSC alleges that this scheme has gone on for the last several years, carried out through misrepresentations on Cassetica's web site, its Counterclaim is muddled. For example, CSC first alleges that Cassetica has marketed its product as free for home users. Def.'s Countercl. at ¶ 7. But in the next paragraph, CSC alleges that Cassetica has engaged in a bait-and-switch scheme by falsely promoting the product as free, and then seeking to enforce a putative enterprise license agreement with the individual's employer for the unwanted software. *Id.* at ¶ 8. The Court is unsure what promoting a

product as free for home users has to do with a bait-and-switch scheme involving business licenses.

Perhaps more on point is CSC's allegation that Cassetica has at times offered its license free for one user per company. However, according to the Counterclaim, Cassetica never informed employees at the time of download as to whether any other employee in their company had already downloaded the software. And it never informed employers at the time of download that, because of their employees' actions, they had entered into enterprise-wide license agreements. Def.'s CounterCl. at ¶ 12–13.

It is difficult to tell from CSC's Counterclaim what was offered to whom, and when. This lack of clarity may stem from the fact that Cassetica has apparently changed the terms upon which it offers the NotesMedic software over the years, depending on the version at issue. For example, according to Cassetica's Memorandum in Support of its Motion to Dismiss, the company now offers a free home user option, an "enterprise license," that covers a single corporate entity, and a "global license" that covers a corporate entity and any subsidiaries or affiliates. Cassetica acknowledges that in the past it has offered a free version of its NotesMedic software for one user per company, but maintains that it no longer does so. In its Counterclaim, CSC acknowledges without elaboration that Cassetica's licensing terms have changed, but maintains that

they have "at all times remained deceptive and misleading." Def.'s CounterCl. at ¶ 12.

The IUDTPA allows for the enjoining of deceptive or unfair trade practices, and "is primarily directed towards acts which unreasonably interfere with another's conduct of his business." *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992). The statute principally serves as a means to stop unfair competition, not to protect consumers. *Id.* However, a consumer action is possible under the statute if the consumer alleges facts that indicate he is likely to be damaged in the future. *Id.* at 1157. This is a difficult showing to make, because ordinarily in a consumer action under the IUDTPA, the harm from the allegedly deceptive practice has already occurred. *Id.*

As an initial matter, the parties disagree as to whether CSC's Counterclaim under the IUDTPA is governed by the heightened pleading standards that apply to claims sounding in fraud under FED. R. CIV. P. 9(b). Claims under the IUDTPA are not automatically subject to Rule 9(b) because the Act provides relief for a variety of unfair or deceptive trade practices, some of which do not amount to fraud but which create a likelihood of confusion or misunderstanding. 815 Ill. Comp. Stat. 510/2(12); *see Publications Int'l, Ltd. v. Leapfrog Enters., Inc.*, No 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002)(holding that allegations

of an IUDTPA violation based on trademark infringement were not subject to Rule 9(b)).

CSC relies in part on *Sotelo v. DirectRevenue, LLC*, 384 F.Supp.2d 1219 (N.D. Ill. 2005). There, the defendant was accused of using misleading advertising that promised free software downloads, but failed to reveal that the software was bundled with Spyware that tracked which web sites the computer's user had viewed. *Id.* at 1223. The court held that the plaintiff's claims based on the IUDTPA were not subject to Rule 9(b) because the plaintiff disavowed a theory of recovery based on fraud and instead alleged that defendant's conduct created a likelihood of confusion or misunderstanding. *Id.* at 1233–34.

*Sotelo* is not exactly on point in part because CSC has not disavowed its reliance on a fraud theory. It alleges that Cassetica marketed its software in a deceptive manner "as part off a scam to cause companies to unknowingly enter into putative licenses of unwanted Cassetica software." Def.'s CounterCl. at ¶ 6. Additionally, in its response brief, CSC cites to Section 2(a)(5) of the IUDTPA, which prohibits representations that goods have qualities or benefits that they do not have. 815 Ill. Comp. Stat. 510/2(a)(5). This portion of the statute essentially forbids fraudulent misrepresentations. *See Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg.*, LLC, --- F.Supp.2d ---, 2011 WL 1838872, at *6 (N.D. Ill. May 11, 2011).

However, read generously, the Counterclaim alleges conduct that is not only deceptive but unfair, and the IUDTPA applies to both. An action for unfair practices need only meet the liberal notice pleading requirements of Fed. R. Civ. P 8(a). *Cf. Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th 2008)(applying the same reasoning to a claim under the Illinois Consumer Fraud Act). But deciding the correct pleading standard does not resolve the motion because in order for a consumer claim under the IUDTPA to stand, the consumer must allege the elements required to entitle it to injunctive relief, including that it is likely to be damaged in the future. *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F.Supp.2d 982, 991 (N.D. Ill. 2006). CSC's Counterclaim fails to do this.

As noted above, it is impossible to tell when Cassetica made certain offers or representations and about which version of the software. In fact, CSC's Counterclaim refers to "NotesMedic Pro," a version of the software that predates the versions at issue in this lawsuit. Def.'s CounterCl. at ¶ 10. It appears that CSC has conflated representations made about different versions of the NotesMedic product. This is important because if Cassetica no longer offers a free version of its NotesMedic software to a single corporate user, as appears to be the case, then it is difficult for the Court to see how CSC employees could be tricked into entering into enterprise licenses in the future under the guise of

downloading one free copy of the software. CSC argues there is a risk of future harm because its employees have continued to download Cassetica's software even after the previous infringement suit and even after CSC blocked Cassetica's web sites from its servers. But even accepting that as true, CSC must plead facts to show that deception or unfair practices on the part of Cassetica are the cause of the future harm. As it stands, CSC's Counterclaim under the IUDTPA does not do that.

As such, CSC's Counterclaim under the IUDTPA is dismissed pursuant to FED. R. CIV. P. 12(b)(6), with leave to replead within 30 days from the date of this Order if CSC can show a likelihood of future harm. However, in the event CSC chooses to replead, the Court notes that punitive damages are not available under the IUDTPA. Rather, the sole remedy is injunctive relief. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 996 (Ill. App. Ct. 2008).

### C. Common Law Unfair Competition

CSC attempts to state an Illinois common law claim for unfair competition based on the same facts outlined above, namely that Cassetica acted in bad faith by enticing employees to download software that was deceptively promoted as free in order to lure their employers into paying for enterprise licenses. Illinois courts have not specified the elements of a common law claim for unfair competition. *BlueStar Mgmt. LLC v. Annex Club*, 09 C 4540,

2010 WL 2802213, at *9 (N.D. Ill. July 12, 2010). Indeed, the Seventh Circuit has aptly declared its elements to be "elusive." *Wilson v. Electro Sys.*, 915 F.2d 1110, 1118 (7th Cir. 1990).

Given that uncertainty, CSC is correct that the tort of unfair competition is somewhat broadly defined. However, courts have noted that the IUDTPA has codified most aspects of the common law of unfair competition. *BlueStar*, 2010 WL 2802213, at *9. And where applicable, the tort generally applies either to tortious interference with prospective economic advantage or to actions that misappropriate the labor or ideas of another. *Wilson*, 915 F.2d at 1118; *Zenith Elecs. Corp. v. Exzec*, Inc., 93 C 5041, 1997 WL 223067, at *6 (N.D. Ill. March 27, 1997). CSC does not allege either type of wrongdoing. Nor has CSC presented any reason why it should be allowed to pursue an unfair competition claim that is identical to its statutory claim under the IUDTPA. Its unfair competition claim is dismissed with prejudice.

### III. **MOTION TO STRIKE**

CSC has pleaded eight affirmative defenses: (1) failure to state a claim; (2) estoppel; (3) statute of limitations; (4) laches; (5) acquiescence; (6) unclean hands; (7) *res judicata* or collateral estoppel based on Judge Kendall's June 18, 2009 order; and (8) a lack of damages.

Cassetica moves to strike all of CSC's affirmative defenses on various grounds. FED. R. CIV. P. 12(f) provides that a court may

strike an insufficient defense or "any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are disfavored, but they are appropriate to remove "unnecessary clutter" from the litigation. *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989). The decision of whether to strike material is within the discretion of the trial court. *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 665 (7th Cir. 1992).

Courts apply a three-part test in examining the sufficiency of affirmative defenses under Rule 12(f): (1) whether the matter is properly pleaded as an affirmative defense; (2) whether the affirmative defense complies with F<small>ED</small> R. C<small>IV</small>. P. 8 and 9; and (3) whether the affirmative defense can withstand a challenge under Rule 12(b)(6). *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.,* No. 05 C 6656, 2007 WL 1238917, at *1 (N.D. Ill. April 25, 2007). An affirmative defense that fails to meet any of these standards must be stricken to make the pleadings more precise. *Id.*

The parties dispute whether the pleading standards of *Twombly/Iqbal* apply here. This Court, like the majority of courts within this circuit, finds that they do. *Massenberg v. A & R Sec. Servs., Inc.*, No. 10 C 7187, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011). However, the Court notes that Judge George M. Marovich's ruling in *Leon v. Jacobson Transp.*, No. 10 C 4939, 2010 WL 4810600 (N.D. Ill. Nov. 19, 2010), taking the opposite position

and cited by CSC, makes several insightful observations. In particular, it is often true that affirmative defenses, even if technically inappropriate, cause no real prejudice, and striking them is not worth the time and expense it takes for the parties and the Court to brief and rule on such a motion. *Id.* at *1.

That said, the Court will briefly discuss each of the affirmative defenses at issue here. First, Cassetica is correct that "failure to state a claim" is not a proper affirmative defense, so it is stricken with prejudice. *Ill. Wholesale Cash Register, Inc. v. PCG Trading, LLC*, No. 08 C 363, 2009 WL 1515290, at *2 (N.D. Ill. May 27, 2009).

Next, Cassetica challenges CSC's affirmative defenses of estoppel, laches, acquiescence, statute of limitations, and *res judicata* or collateral estoppel based on Judge Kendall's 2009 order. First, CSC does not plead its defense of laches or estoppel with particularity, which is a sufficient basis for striking these defenses. *See Microthin.com, Inc. v. Siliconezone USA, LLC*, No. 06 C 1522, 2006 WL 3302825, at *10 (N.D. Ill. Nov. 14, 2006). CSC explains in its response brief that those defenses — as well as acquiescence, the statute of limitations, and res judicata/collateral estoppel — are based on its belief that Cassetica's Complaint alleges infringement dating back nearly 10 years. However, the Court does not read the Complaint so broadly, and as such these affirmative defenses are immaterial to the case.

While the Complaint refers to prior alleged infringement, Cassetica seeks relief only for infringement of Versions 6 and 7 of its NotesMedic program, neither of which had been published or registered with the Copyright Office at the time of the prior lawsuit before Judge Kendall. Because they are inapplicable to the software at issue here, the Court strikes the affirmative defenses of laches, estoppel, acquiescence, statute of limitations, and *res judicata*/collateral estoppel. If Cassetica seeks leave to amend its Complaint to pursue claims related to prior works, CSC will be given leave to replead these affirmative defenses.

Next, Cassetica seeks to strike CSC's affirmative defense that Plaintiff has suffered no damages by way of the conduct complained of in the Complaint. Although Cassetica seeks both actual and statutory damages, actual damages are not a necessary element of its copyright claims. *See* 17 U.S.C. § 504(c)(1). An affirmative defense, by definition, admits the matters in the complaint, but suggests a reason why the plaintiff nonetheless cannot recover. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D. Ill. 1982). Because a lack of actual damages does not call Cassetica's right of recovery into question, the defense of lack of damages is stricken with prejudice.

However, CSC's affirmative defense of unclean hands is properly pleaded. CSC's IUPTPA claim, while insufficient to show a likelihood of future harm, contains sufficient background facts

to alert Cassetica to the nature of its defense.  Further, it is an appropriate defense where Cassetica is seeking injunctive as well as monetary relief.  *Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F.Supp.2d 850, 905 (N.D. Ill. 2009).  As such, the Court grants Cassetica's Motion to Strike CSC's Affirmative Defenses, except that the defense of unclean hands may stand.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Cassetica's Motion to Dismiss CSC's Counterclaims is granted, and its common law unfair competition claim is dismissed with prejudice.

2. CSC is given 30 days from the date of this Order to replead its claim alleging a violation of the IUDTPA.

3. Cassetica's Motion to Strike CSC's Affirmative Defenses is granted, except that the defense of "unclean hands" will stand.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

**DATE:** 9/22/2011